UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMUEL CABASSA,

                              Plaintiff,

        v.                                                    No. 01-CV-1039
                                                              (DNH/GHL)
CRAIG GUMMERSON, Corrections Captain, Auburn
Correctional Facility; DONALD SELSKY, Assistant
Deputy Commissioner/Director of Special Housing/
Disciplinary Program; ANTHONY GRACEFFO, Chief
Medical Doctor, Auburn Correctional Facility; GLENN
S. GOORD; HANS WALKER; GARY HODGES; D.W.
SEITZ; TERRY A. HALCOTT; CHRISTINE COYNE;
NANCY O'CONNOR; ANN DRISCOLL; JOHN
MCCLENNEN; JOHN ROURKE, Captain, Security
Services, Auburn Correctional Facility; KOORS,
Head Pharmacist, Auburn Correctional Facility;
ROBERT MITCHELL, Correctional Counselor, Auburn
Correctional Facility; and ANDROSKO,
Registered Nurse, Auburn Correctional Facility,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

SAMUEL CABASSA, 84-A-0364
  Plaintiff, *Pro Se*
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

HON. ELIOT L. SPITZER                                 DAVID L. FRUCHTER, ESQ.
Attorney General for the State of New York            Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In this *pro se* civil rights complaint brought under 42 U.S.C. § 1983, Inmate Samuel Cabassa ("Plaintiff") generally alleges that Defendants (fifteen employees of the New York State Department of Correctional Services) violated his rights under the First, Eighth and/or Fourteenth Amendments between January of 1998 and August of 1998 by confining him to the Auburn Correctional Facility Special Housing Unit without cause or explanation, and by being deliberately indifferent to his serious medical needs, which included severe dehydration during his hunger strike, a painful eye condition, a painful hemorrhoid condition, and a deteriorating mental health condition. (*See generally* Dkt. No. 16 [Plf.'s Fourth Am. Compl.].)

Currently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 58.) Generally, Defendants' motion raises three issues: (1) whether Plaintiff's claims against Defendants Mitchell, Koors, Coyne, Halcott and Hodges should be dismissed due to Plaintiff's failure to serve them with process, (2) whether the majority of Plaintiff's claims should be dismissed as barred by New York State's three-year statute of limitations governing such claims, and (3) whether two of Plaintiff's claims should be dismissed for lack of personal involvement and/or failure to establish a claim under the Eighth Amendment. (Dkt. No. 58, Part 4 [Def.'s Mem. of Law].) For the reasons discussed below, I answer each of these questions largely in the affirmative. As a result, I recommend that Defendants' motion for summary judgment be granted in part and denied in part, with leave to renew.

## I.       SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a

genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party. *Schwapp v. Town of Avon*, 118 F.3d 106, 110

(2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)

(citation omitted). However, when the moving party has met its initial burden of establishing the

absence of any genuine issue of material fact, the nonmoving party must come forward with

"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also*

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

To "specifically controvert[]" each of the statements of material fact in a defendant's

Rule 7.1(a)(3) Statement of Material Facts, a plaintiff must file a *response* to the Statement of

Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or

denying each of the movant's assertions in matching numbered paragraphs" *and* that "set[s] forth

a specific citation to the record where the factual issue arises."[2]

---

[1]        A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[2]        Local Rule 7.1(a)(3); *see*, *e.g.*, *Jones v. Smithkline Beecham Corp.*, 309 F.
Supp.2d 343, 346 (N.D.N.Y. 2004) (McAvoy, J.) ("[W]here Plaintiff has failed to provide
specific references to the record in support of her denials or has otherwise failed to completely
deny Defendant's assertions of fact, those assertions will be taken as true."); *Lee v. Alfonso*, 97-
CV-1741, 2004 U.S. Dist. LEXIS 20746, at *15 (N.D.N.Y. Feb. 10, 2004) (Scullin, C.J.)
("Plaintiff does not offer any facts to support his claims that would raise an issue of fact.  Nor has

"If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that . . . the moving party is entitled to a judgment as a matter of law.'" *Champion*, 76 F.3d at 486 (quoting Fed. R. Civ. P. 56[c]).[3] Therefore, the Court must review the merits of the motion. *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001).

Where a plaintiff has failed to respond to a defendant's Rule 7.1 Statement of Material Fact, the facts as set forth in that Rule 7.1 Statement are accepted as true to the extent those facts

---

he overcome his failure to respond to Defendants' Rule 7.1(a)(3) Statement. Therefore, Defendants' version of the facts remains uncontroverted."); *Margan v. Niles*, 250 F. Supp.2d 63, 67 (N.D.N.Y. 2003) (Hurd, J.) ("Plaintiff's Rule 7.1(a)(3) statement, which contains numerous denials, does not contain a single citation to the record. Because plaintiff's response Rule 7.1(a)(3) statement does not comply with the local rules, it has not been considered."); *Mehlenbacher v. Slafrad*, 99-CV-2127, 2003 U.S. Dist. LEXIS 9248, at *4 (N.D.N.Y. June 4, 2003) (Sharpe, M.J.) ("Since [the plaintiff] has failed to respond to the defendants' statements of material fact, the facts as set forth in the defendants' Rule 7.1 Statement . . . are accepted as true."); *Adams v. N.Y. State Thruway Auth.*, 97-CV-1909, 2001 U.S. Dist. LEXIS 3206, at *2, n.1 (N.D.N.Y. March 22, 2001) (Mordue, J.) ("[T]o the extent plaintiff's responses violate Local Rule 7.1, and are not properly admitted or denied, the Court will deem defendant's statement of fact admitted by plaintiff."); *see also Holtz v. Rockefeller*, 258 F.3d 62, 74 (2d Cir. 2001) ("[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").

[3]      Local Rule 7.1(b)(3) recognizes this requirement (that the motion have merit) when it provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(b)(3).

are supported by the record.[4]  A district court has no duty to perform an independent review of

the record to find proof of a factual dispute.[5]  In the event the district court chooses to conduct

such an independent review of the record, any verified complaint filed by the plaintiff should be

treated as an affidavit.[6]  I note that, here, Plaintiff's Fourth Amended Complaint ("Complaint") is

verified.

---

[4]     *See* Local Rule 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.") [emphasis in original]; *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g., Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[5]     *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[6]     *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[7]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[8]  In addition, such an affidavit (or verified complaint) must not be conclusory.[9]  An affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting evidence or are too general.[10]

---

[7]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.*, 516 U.S. 806 (1995).

[8]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[9]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[10]    *See, e.g., Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[11]

---

*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[11]     *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

## II.    ANALYSIS

### A.    Whether Plaintiff's Claims Against Defendants Mitchell, Koors, Coyne, Halcott and Hodges Should Be Dismissed Due to Plaintiff's Failure to Serve Them with Process

In their Memorandum of Law, Defendants argue that Auburn C.F. Corrections Counselor Robert Mitchell, Auburn C.F. Pharmacist "Mr. Koors," Auburn C.F. Nurse Christine Coyne, Auburn C.F. C.O. Terry A. Halcott and Gowanda C.F. Superintendent Gary Hodges are not properly "Defendants" in this action because they were never served with process.  (Dkt. No. 58, Part 4 at 2.)

I find that this argument is factually supported by the record.  Specifically, the docket in this action shows that, in the nearly two years between the filing of Plaintiff's (Fourth Amended) Complaint on February 3, 2003, and the filing of Defendants' motion for summary judgment on January 28, 2005, Plaintiff repeatedly failed to take the steps necessary to have these five individuals served with process,[12] despite being twice ordered by the Court to provide "any documents that are necessary to maintain this action" (e.g., USM 285 Forms),[13] and despite the agreement of two of the five individuals to permit the DOCS' Counsel's Office to accept service

---

[12]    (Dkt. No. 43 [documents, filed on 3/29/04, showing that Gary Hodges could not be served with process and that Plaintiff had to submit a new USM 285 form if he wished service to again be attempted]; Dkt. No. 45 [Notice to Plaintiff from U.S. Marshals Service, filed on 4/19/04, informing him that he failed to properly sign his USM 285 forms]; Dkt. No. 50 [Notice to Plaintiff from U.S. Marshals Service, filed on 7/9/04, that Plaintiff failed to provide USM 285 forms for each Defendant].)

[13]    (Dkt. No. 17 at 3-4 [Order of Judge Hurd, filed on 3/27/03, directing that, *inter alia*, "the Clerk shall issue summonses and forward them . . . to the United States Marshal for service upon Defendants . . . . [and] Plaintiff shall . . . comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action"], *accord*, Dkt. No. 21 at 2-3 [Order of Judge Hurd, filed on 10/15/03].)

on their behalf if an Acknowledgment of Receipt by Mail of Summons and Complaint were sent
to DOCS' Counsel's Office.[14]  Because of Plaintiff's failure to provide the necessary USM 285
Forms, service was not effected on these five individuals.[15]

Plaintiff acknowledges this failure to serve, but blames the failure on (1) opposing
counsel (Assistant Attorney General David L. Fruchter), whom he says promised to "locate . . .
and serve [these five individuals] on [Plaintiff's] behalf," and (2) two of his named Defendants
(Terry Halcott and Gary Hodges), whom he argues "twice refused to accept service from the U.S.
Marshal."  (Dkt. No. 60, Part 4 at 2 [Plf.'s Mem. of Law].)  I can find no evidentiary support for
these conclusory arguments.  Furthermore, I am unconvinced by Plaintiff's legal argument that
opposing counsel somehow abrogated or assumed Plaintiff's legal duty to provide USM 285
forms to the U.S. Marshals Service.

The only plausible argument that Plaintiff has that the failure to serve was not his fault is
with respect to Defendants Coyne and Halcott.  As indicated above, Defendants Coyne and

---

[14]    (Dkt. No. 47 [letter to Court from DOCS' Counsel filed on 5/26/04, informing
Court that Defendants Coyne and Halcott have authorized DOCS' Counsel to accept service on
their behalf if an Acknowledgment of Receipt by Mail of Summons and Complaint were sent to
DOCS' Counsel].)

[15]    (Dkt. No. 26 [documents, filed on 11/17/03, showing that Christine Coyne could
not be served with process because "she is no longer employed by the Dept. of Corrections and
her whereabouts is unknown"]; Dkt. No. 34 [documents, filed on 12/3/03, showing that Terry A.
Halcott could not be served with process because the U.S. Marshals Service "tried unsuccessfully
to contact Ms. Halcott.  She has not been employed by the Dept. of Corrections for several
years"]; Dkt. No. 43 [documents, filed on 3/29/04, showing that Gary Hodges could not be
served with process because "service of process . . . was attempted [unsuccessfully] on 11/6/03];
Dkt. No. 51 [documents, filed on 8/5/04, showing that Robert Mitchell and Mr. Koors could not
be served with process because "Mr. Mitchell retired to Florida several years ago and [DOCS has
no record of anyone] named Koors currently employed at" Auburn C.F.]; Dkt. No. 57
[documents, filed on 12/14/04, showing that Gary Hodges could not be served with process
because he was "no longer employed at Gowanda C.F."].)

Halcott authorized the DOCS' Counsel's Office (on or about May 26, 2004) to accept service on

their behalf.  The U.S. Marshals Service then informed Plaintiff (on or about July 9, 2004) that

he needed to provide them with new USM 285 Forms.  However, no record exists of Plaintiff

having done so in a timely manner (or at all).  Under the circumstances, I find the failure to serve

was Plaintiff's fault, not the U.S. Marshal's fault.[16]  Even after receiving notice of Defendants'

failure-to-serve argument through the filing of their summary judgment motion in January of

2005, Plaintiff has not taken the steps necessary to effectuate service on these two individuals (or

the other three individuals).[17]

    As a result, I recommend that the Court dismiss Plaintiff's claims against Defendants

Mitchell, Koors, Coyne, Halcott and Hodges under the Local and Federal Rules.[18]  In the

---

[16]    *See Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at \*6-7, 21-23 (N.D.N.Y. March 31, 2005) (Scullin, C.J.) (reaching same conclusion where U.S. Marshal's Service notified the plaintiff that, if he desired further attempts of service on two defendants, he must notify the U.S. Marshal's Service in writing, which the plaintiff did not do; also finding that two other defendants were properly served where they had authorized the DOCS' Counsel's Office to accept service on their behalf, *and the plaintiff had provided proper USM 285 forms for those two defendants*).

[17]    *See Webber v. Hammock*, 973 F. Supp. 116, 121 (N.D.N.Y. 1997) (Scullin, J.) (holding that, even if initial failure to serve Defendant Hammack in 1990 was attributable to U.S. Marshal's Service, due to its failure to reasonably infer that when Plaintiff referred to "Dr. Hammock" he meant Dr. Hammack, "this error may have constituted 'good cause' for the Court to allow an extension of time for service of Defendant Hammack in 1990, [but] it is now 1997" and "[t]he Court cannot, at this point in time, overlook the Plaintiff's failure to serve the Defendants with a complaint that was filed in 1990").

[18]    *See* Fed. R. Civ. 16(f) ("If a party . . . fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just [including dismissal] . . . ."); Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); N.D.N.Y. L.R. 4.1(b) ("General Order 25 . . . requires . . . service of process upon all defendants

alternative, I would recommend dismissal of nearly all Plaintiff's claims against these five

individuals (i.e., all of Plaintiff's claims except his claim, asserted in his "Fourth Cause of

Action," that Defendant Mitchell violated Plaintiff's Fourteenth Amendment rights by failing to

provide "meaningful review" of Plaintiff's status in administrative segregation), based on

Plaintiff's violation of the three-year statute of limitations governing such claims, as discussed

below in Part II.B. of this Report-Recommendation.

### B.   Whether the Majority of Plaintiff's Claims Should Be Dismissed as Barred by the Statute of Limitations

Defendants argue that the vast majority of Plaintiff's claims are barred by New York

State's three-year statute of limitations governing such claims.  (Dkt. No. 58, Part 4 at 3-5.)

However, Plaintiff responds correctly that, under "the prison mail box rule," his original

Complaint should be deemed as having been "filed" with the Court when he handed that

Complaint to a corrections officer to be mailed.[19]  In addition, Plaintiff has persuaded me,

through the submission of record evidence, that he handed the original Complaint in this action

to a corrections officer for mailing on June 20, 2001.[20]  Even if Plaintiff had submitted no such

---

within sixty (60) days of the filing of the complaint. . . .  In no event shall service of process be
completed after the time specified in Fed. R. Civ. P. 4.").

[19]     *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying the rationale of
*Houston v. Lack*, 487 U.S. 266 [1988], regarding the filing date of appeals to *habeas corpus*
proceedings, to prison civil rights actions filed pursuant to 42 U.S.C. § 1983); *accord*, *Pritchard
v. Kelly*, 98-CV-0349, 2000 WL 33743378, at *2 & n.2 (N.D.N.Y. Oct. 3, 2000) (Sharpe, M.J.).

[20]     (Dkt. No. 60, Part 5 at 3-4 [referenced by Plaintiff as Exhibits "A1" and "A2,"
containing two New York State Department of Correctional Services Disbursement or Refund
Requests, signed by Plaintiff, addressed to the Clerk's Office of this Court, and dated 6/20/01].)
Evidence like this was found sufficient in *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993)
("[Plaintiff's] argument is substantiated by a copy of the Department of Correctional Services
form demonstrating that he had submitted his legal papers to prison officials prior to the official

record evidence, I would conclude that the date that Plaintiff handed his original Complaint to corrections officers at Auburn C.F. for mailing was June 20, 2001, based on the date Plaintiff signed that Complaint (June 20, 2001) (Dkt. No. 1 at 20).[21]

However, this does not end the inquiry.  Also needing to be determined is the date of the events giving rise to each of the claims asserted in Plaintiff's (Fourth Amended) Complaint. Generally, I agree with Defendants and not with Plaintiff regarding the dates of the events giving rise to each of Plaintiff's claims in this action.  (*Compare* Dkt. No. 58, Part 4 at 3-5 with Dkt. No. 60, Part 4 at 5-6.)  After carefully scrutinizing Plaintiff's (Fourth Amended) Complaint, I find that, liberally construed, Plaintiff's claims, and the dates of the events giving rise to those claims, are accurately summarized as follows:

(1)     **January 12, 1998-January 13, 1998** -- Defendant Seitz violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment when he authored an Administration Segregation ("AS") recommendation without first making an independent inquiry as to the reliability and credibility of the confidential informants (who provided the information upon which that recommendation was based).  (Dkt. No. 16, ¶¶ 6-6(3) ["First Cause of Action"]);

(2)     **January 14, 1998** -- Defendant Gummerson violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment when, after a disciplinary

---

filing of the complaint.").

[21]     *See Minguez v. C.O. Nelson*, 96-CV-5396, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004) ("Given the difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel, the date the plaintiff signed the original complaint is presumed to be the date plaintiff gave the complaint to prison officials to be mailed.").

hearing, he accepted Defendant Seitz's recommendation without first making an
independent inquiry as to the reliability and credibility of the confidential
informants (who provided the information upon which that recommendation was
based) (Dkt. No. 16, ¶¶ 6[4]-6[5] ["Second Cause of Action"]);

(3)     **March 11, 1998** -- Defendants Goord and Selsky violated Plaintiff's rights under
the Due Process Clause of the Fourteenth Amendment when they affirmed on
appeal and "deliberately fail[ed] to overturn the faulty disciplinary conviction" of
January 14, 1998 (Dkt. No. 16, ¶¶ 6[6]-6[10] ["Third Cause of Action"]);

(4)     **January 14, 1998-June 22, 1998** -- Defendants Walker, Rourke, Seitz and
Mitchell violated Plaintiff's rights under the Due Process Clause of the Fourteenth
Amendment when they repeatedly failed to provide meaningful review of his
status in administrative segregation despite the existence of grounds that required
such review (Dkt. No. 16, ¶ 6[18] ["Fourth Cause of Action"]);

(5)     **June 19, 1998-June 22, 1998** -- Defendants Walker, Gummerson and Seitz
violated Plaintiff's rights under the Due Process Clause of the Fourteenth
Amendment, and his right of access to the courts under the First Amendment,
when they intentionally delayed his release from SHU for three days (i.e., from
June 19, 1998, to June 22, 1998), despite knowing of the issuance of a state court
decision requiring Plaintiff's release from SHU (Dkt. No. 16, ¶¶ 6[11]-6[17]
["Fifth Cause of Action"]);

(6)     **January 25, 1998** – Defendants Walker and Hodges violated Plaintiff's rights
under the Eighth Amendment when they deliberately interfered with Plaintiff's

13

necessary access to emergency medical treatment outside Auburn C.F. (e.g., for dehydration, malnutrition, and ketosis) (Dkt. No. 16, ¶¶ 6[23]-6[26] [first part of "Sixth Cause of Action"];

(7)     **February 19, 1998-May 13, 1998** – Defendant Hodges violated Plaintiff's rights under the Eighth Amendment when he repeatedly "vetoed" Defendant Graceffo's plan to safely break Plaintiff's hunger strike with a special diet (Dkt. No. 16, ¶¶ 6[36], 6[52]-6[55], 6[58]-6[61] [second part of "Sixth Cause of Action"];

(8)     **February 17, 1998-February 19, 1998** and **April 6, 1998-April 20, 1998** -- Defendants O'Connor and Holcott violated Plaintiff's rights under the Eighth Amendment when they deliberately tormented him through the sadistic use of bright light on him when he was in the facility's infirmary (causing him eye pain, migraine headaches, etc.) (Dkt. No. 16, ¶¶ 6[33]-6[34], 6[51] ["Seventh Cause of Action"]);

(9)     **January 14, 1998-January 25, 1998** -- Defendant Androsko violated Plaintiff's rights under the Eighth Amendment when she was deliberately indifferent to Plaintiff's serious medical needs and failed to competently diagnose his medical conditions (e.g., dehydration, malnutrition, and ketosis) (Dkt. No. 16, ¶¶ 6[20]-6[23] ["Eighth Cause of Action"]);

(10)    **January 25, 1998-January 31, 1998**, **February 17, 1998-March 4, 1998** and **March 28, 1998** -- Defendants Driscoll, O'Connor, McClellan and/or Graceffo violated Plaintiff's rights under the First and Eighth Amendments when they tampered with and falsified Plaintiff's medical records to worsen his condition

14

and/or to "oust" him from the facility's infirmary, in retaliation against his hunger strike (Dkt. No. 16, ¶¶ 6[27]-6[28], 6[35], 6[50] ["Ninth Cause of Action]");

(11) **February 11, 1998-May 13, 1998** -- Defendant Graceffo violated Plaintiff's rights under the First and Eighth Amendments when he was repeatedly deliberately indifferent to Plaintiff's serious medical eye condition (for a twenty-five day period), his serious hemorrhoid condition, and his serious mental health condition in retaliation against Plaintiff's hunger strike (Dkt. No. 16, ¶¶ 6[32], 6[44]-6[47], 6[52]-6[55], 6[58], 6[61] [part of "Tenth Cause of Action," part of "Eleventh Cause of Action," "Twelfth Cause of Action," part of "Thirteenth Cause of Action," and part of "Fifteenth Cause of Action"]);

(12) **March 2, 1998-March 28, 1998** -- Defendants O'Connor, Koors, and McClellan violated Plaintiff's rights under the Eighth Amendment when they were repeatedly deliberately indifferent to Plaintiff's serious medical eye condition in retaliation against Plaintiff's hunger strike (Dkt. No. 16, ¶¶ 6[37]-6[43], 6[48]-6[49] [remainder of "Tenth Cause of Action," and "Fourteenth Cause of Action"]);

(13) **January 14-1998-January 25, 1998** and **May 19, 1998** -- Defendant Androsko violated Plaintiff's rights under the Eighth Amendment when he was repeatedly deliberately indifferent to Plaintiff's serious medicals needs when she denied Plaintiff pain medication for his migraine headaches and medication for his serious hemorrhoid condition (Dkt. No. 16, ¶ 6[21], 6[63] [remainder of "Eleventh Cause of Action"]);

15

(14)    **February 11, 1998-April 15, 1998** – Defendant Coyne violated Plaintiff's rights

under the Eighth Amendment when he was deliberately indifferent to Plaintiff's

serious mental health needs (Dkt. No. 16, ¶¶ 6[32], 6[57] [remainder of

"Thirteenth Cause of Action"];

(15)    **January 12, 1998-May 15, 1998** – Defendants Walter, Hodges, Rourke,

Gummerson, Seitz, Mitchell, Halcott, Coyne, O'Connor, Driscoll and McClellan

violated Plaintiff's rights under the First and Eighth Amendments by retaliating

against Plaintiff's hunger strike and/or filing of grievances, and by being

deliberately indifferent to Plaintiff's serious medical needs (*see generally* Dkt.

No. 16, ¶¶ 6[1]-6[62] [remainder of "Fifteenth Cause of Action"];

(16)    **July of 1998** – An unspecified "Defendant" violated Plaintiff's rights under the

Eighth Amendment when he deliberately denied Plaintiff pain medication and

access to a specialist outside Auburn C.F., for treatment of Plaintiff's serious

hemorrhoid condition (Dkt. No. 16, ¶ 6[64] [unspecified cause of action]); and

(17)    **August of 1998** – Defendant Graceffo violated Plaintiff's rights under the Eighth

Amendment when he deliberately denied Plaintiff access to contact lenses, which

had been mailed to the Auburn C.F. medical department and were to be delivered

to Plaintiff, and when he told Plaintiff that he would have to wait one year for

such contact lenses (Dkt. No. 16, ¶ 6[65] [unspecified cause of action]).

As is evident from this summary of Plaintiff's claims, Plaintiff's (Fourth Amended)

Complaint contains only four claims that appear to be permitted under the applicable three-year

limitations period–i.e., the claims listed above as "(4)," "(5)," "(16)" and "(17)."  No matter how

liberally I construe Plaintiff's (Fourth Amended) Complaint, I simply cannot find that the events

forming the basis of the other claims–including claims "(7)," "(11)," "(13)," "(14)" and

"(15)"–occurred after June 19, 1998.  Nor can I grant Plaintiff's request (in his opposition

papers) that I consider all of his claims as part of some massive conspiracy against him which

continued until (or through) the day he was discharged from SHU on June 22, 1998 (Dkt. No. 60,

Part 4 at 6.)

        As an initial matter, it is questionable whether the "continuing violation" doctrine, which

is typically applied in discrimination actions, may also be applied in actions filed pursuant to 42

U.S.C. § 1983.[22]  Even assuming that the doctrine may be applied to actions filed pursuant to

Section 1983, it should be remembered that "few attempts to invoke the doctrine are successful

. . . and the . . . doctrine is disfavored in the Second Circuit."[23]  It should also be remembered

that, to be available, the doctrine requires proof of "a dogged pattern of related acts."[24]

        Here, I find that Plaintiff's reliance on the "continuing violation" doctrine is misplaced

given that Plaintiff's claims (even as liberally construed) allege, overwhelmingly, merely a series

---

[22]        *Compare Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) (finding inmate's deliberate indifference claims under Section 1983 to be time-barred where inmate had "alleged no facts indicating a continuous or ongoing violation of his constitutional rights"), *aff'g, Pino v. Ryan*, 94-CV-0221, Order of Dismissal (N.D.N.Y. March 30, 2004) (Scullin, J.), *with McFarlan v. Coughlin*, 97-CV-0740, 1998 U.S. Dist. LEXIS 5541, at *11 (N.D.N.Y. March 13, 1998) (Homer, M.J.) ("The applicability of the continuing violation doctrine to Section 1983 cases is uncertain.") [collecting cases], *adopted by* 1998 U.S. Dist. LEXIS 5518, at *3 (N.D.N.Y. Apr. 15, 1998) (Pooler, J.) (agreeing with magistrate judge's "carefully-reasoned decision" regarding, inter alia, the application of the continuing violation doctrine).

[23]        *Konigsberg v. Lefevre*, 267 F. Supp.2d 255, 263 (N.D.N.Y. 2003) (Munson, S.J.) [citations omitted]; *McFarlan*, 1998 U.S. Dist. LEXIS 5541, at *11.

[24]        *Konigsberg*, 267 F. Supp.2d at 263; *McFarlan*, 1998 U.S. Dist. LEXIS 5541, at *11.

of (approximately three-dozen) isolated and unrelated actions taken by one or more of fifteen individuals at various times over a seven-month period at different locations within Auburn C.F., which actions (allegedly) constitute a variety of different constitutional violations.[25]  I note that Plaintiff has not adequately stated a claim for (or even alleged the existence of) a conspiracy under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.[26]  Any implicit allegations by Plaintiff in his (Fourth Amended) Complaint that these isolated acts are somehow linked are conclusory and unsupported by the record.

Nor can I find any evidence (or even an argument) that the Court should toll the three-year limitations period with respect to any claims that are time barred due to an allegation that Defendants' actions somehow inhibited Plaintiff from filing this action.[27]

Finally, it appears that Plaintiff's claims against seven of the Defendants (Hodges, Coyne,

---

[25]    (*See generally* Dkt. No. 16, ¶¶ 6-6[65].)  *See Verley v. Goord*, 02-CV-1182, 2004 U.S. Dist. LEXIS 857, at *25-26 (S.D.N.Y. Jan. 22, 2004) ("Because these doctors' involvement consisted of isolated acts . . . the doctrine of 'continuing violation' cannot be applied to toll the statute of limitations as to [the inmate's] claims" of deliberate indifference to a serious medical need against two defendants for inappropriately cancelling the inmate's appointments for a liver biopsy.); *Konigsberg*, 267 F. Supp.2d at 263 ("Plaintiff's claims concerning the DOCS personnel at Auburn [C.F.], outside the limitations period, do not amount to a continuing violation or a continuous set of events that can be anchored to some event within the limitations period that expired many years ago.").

[26]    *See Rodriguez v. Selsky*, 2003 U.S. Dist. LEXIS 23087, at *12-16 (S.D.N.Y. 2003) (rejecting plaintiff's continuing violation argument where, although plaintiff had alleged that defendants' isolated actions were part of a conspiracy, plaintiff failed to state a prima facie claim for conspiracy because, in part, he alleged no facts indicating that there was an *agreement* among defendants to deprive him of any rights), *aff'd sub nom*, *Rodriguez v. McElroy*, 04-0618, 2005 U.S. App. LEXIS 5288 (2d Cir. Apr. 1, 2005).

[27]    I note that Plaintiff acknowledges that, while he was in SHU during this time period, he filed other actions (e.g., a disciplinary decision appeal, a letter complaint, a grievance, and a state court action).  (Dkt. No. 16, ¶¶ 6[6], 6[11], 6[43], 6[48].)

Driscoll, McClennen, Rourke, Koors, and Mitchell) should be found to be time barred for an

additional reason.  Even assuming that the continuing violation doctrine applies to all of

Plaintiff's claims in his (Fourth Amended) Complaint, the sole reason that Plaintiff's claims

against these seven Defendants (which were *first* asserted in Plaintiff's Second, Third or Fourth

Amended Complaints) would be considered timely would be if they "related back" to the claims

asserted in Plaintiff's original Complaint filed on June 20, 1999.  *See* Fed. R. Civ. P. 15(c).

However, it does not appear that Plaintiff's claims against these seven Defendants do in fact

relate back to the claims in the original Complaint, which does not mention or clearly concern

them.[28]  Plaintiff himself appears to acknowledge this fact.[29]

Under the circumstances, it would appear to be unfair to these seven Defendants to permit

Plaintiff to benefit from the "relation back" rule with respect to his otherwise untimely claims

against them.[30]  (For example, during the passage of time between when Plaintiff filed his

original Complaint on June 20, 1999, and when he finally got around to asserting claims against

Defendants Coyne, Hodges, Mitchell, and Koors, it appears that they left employment with

---

[28]     (*See* Dkt. No. 1 [naming only Gummerson, Selsky and Graceffo as Defendants; and mentioning only Seitz, Androsko, Walker, Goord, O'Connor, and Halcott as additional wrongdoers in the Complaint].)

[29]     (Dkt. No. 40 [letter dated 12/30/03 from Plaintiff to Court, stating, *inter alia*, that "most of them [referring to Defendants Hodges, Rourke, Mitchell, Androsko and Koors] were added as defendants sometime during my third or fourth amend[ed] complaint"].)

[30]     *See Doe v. Blake*, 809 F. Supp. 1020, 1025-1026 (D. Conn. 1992) (finding that because the DOCS Commissioner "was not named in plaintiff's original *pro se* complaint . . . relation back [under Rule 15] is not appropriate here, as [the Commissioner] did not receive, within the limitations period, such notice of the institution of the action that he would not be prejudiced in maintaining a defense").

DOCS.)[31]

Although this last point provides merely an alternative reason for dismissing the claims against five of the seven Defendants based on untimeliness, it provides the sole reason for dismissing Plaintiff's claims against two of the Defendants (Defendants Rourke and Mitchell) in Plaintiff's "Fourth Cause of Action" based on untimeliness (since I previously found those claims to be timely).

As a result, I recommend that the Court dismiss all of Plaintiffs claims as barred by the applicable statute of limitations, *except* (1) the claims asserted against Defendants Walker and Seitz in Plaintiff's "Fourth Cause of Action," (2) all of the claims asserted in Plaintiff's "Fifth Cause of Action," (3) Plaintiff's claim that in July of 1998 an unspecified Defendant violated Plaintiff's rights under the Eighth Amendment when he deliberately denied Plaintiff treatment for his serious hemorrhoid condition, and (4) Plaintiff's claim that in August of 1998 Defendant Graceffo violated Plaintiff's rights under the Eighth Amendment when he deliberately denied Plaintiff access to contact lenses.  (Dkt. No. 16, ¶¶ 6[64], 6[65], 7.)

---

[31]        (Dkt. No. 26 [documents, filed on 11/17/03, showing that Christine Coyne could not be served with process because "she is no longer employed by the Dept. of Corrections and her whereabouts is unknown"]; Dkt. No. 43 [documents, filed on 3/29/04, showing that Gary Hodges could not be served with process because "service of process . . . was attempted [unsuccessfully] on 11/6/03]; Dkt. No. 51 [documents, filed on 8/5/04, showing that Robert Mitchell and Mr. Koors could not be served with process because "Mr. Mitchell retired to Florida several years ago and [DOCS has no record of anyone] named Koors currently employed at" Auburn C.F.]; Dkt. No. 57 [documents, filed on 12/14/04, showing that Gary Hodges could not be served with process because he was "no longer employed at Gowanda C.F."].)

C.    **Whether Plaintiff's Last Two Claims Should Be Dismissed for Lack of Personal Involvement and/or Failure to Establish a Claim under the Eighth Amendment**

1.    **Plaintiff's Claim Against an Unidentified Defendant for Deliberate Indifference to Plaintiff's Alleged Hemorrhoid Condition in or about July of 1998**

Defendants argue that Plaintiff's claim for deliberate indifference to his (alleged) hemorrhoid condition in or about July of 1998 should be dismissed for two independent reasons. First, Defendants argue that Plaintiff has failed to establish (or even allege in his Fourth Amended Complaint) that any particular Defendant was personally involved in the allege denial of adequate medical care of Plaintiff's (alleged) hemorrhoid condition in or about July of 1998. (Dkt. No. 58, Part 2 at 6-7 [citing Paragraph 6(64) of Plf.'s Compl.].)  Second, Plaintiff has failed to establish that his (alleged) hemorrhoid condition constituted a *sufficiently serious medical condition* for purposes of the Eighth Amendment, or that any Defendant exhibited the sort of reckless disregard necessary to show *deliberate indifference* to that serious medical condition for purposes of the Eighth Amendment.  (Dkt. No. 58, Part 2 at 6-7.)

a.    **Personal Involvement**

As to Defendants' first legal argument, I find that argument factually and legally supported.  Defendants are correct that Plaintiff fails to identify, in his (Fourth Amended) Complaint, which Defendant (allegedly) denied him pain medication in or about July of 1998. (Dkt. No. 16, ¶ 6[64] [Plf.'s Compl., alleging, "On or about July, 1998, defendant denied plaintiff pain relief medication for his hemorrhoidal condition and access to all outside consult with a specialist for same."].)  In addition, I agree with Defendants that such a claim fails as a matter of law, especially where (as here) Plaintiff has been given the opportunity to conduct

21

discovery and amend his complaint and still has not identified which Defendant is the subject of his claim.[32]

While this conclusion needs no further support, it is further supported by the fact that, in his Memorandum of Law, Plaintiff responds only to the second legal argument advanced by Defendants (regarding the two elements of a deliberate indifference claim), while failing to address the first argument (regarding personal involvement).  (Dkt. No. 60, Part 4 at 14-22.) Under the Local Rule 7.1(b)(3), Plaintiff is deemed to have consented to the granting of Defendants' motion based on this first argument.[33]

I note that buried in Plaintiff's opposition papers are two pieces of paper suggesting that Plaintiff may have complained to Defendant O'Connor of hemorrhoids, or shown symptoms of hemorrhoids, on April 26, 27, and 28 1998; and that Plaintiff may have complained to Defendant

---

[32]    *See Shomo v. City of New York*, 03-CV-10213, 2005 WL 756834, at *9 (S.D.N.Y. Apr. 4, 2005) (granting Rule 12[b][6] motion to dismiss inmate's Section 1983 claims of deliberate indifference to a serious medical need due, in part, to the plaintiff's failure to name which individuals allegedly ignored medical instructions, and his use instead of the passive voice when discussing how his alleged injuries were inflicted; stating that the plaintiff "must identify the party responsible for his injuries").

[33]    *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

Graceffo of hemorrhoids, or shown symptoms of hemorrhoids, on April 29, 1998.  (Dkt. No. 60,

Part 6 at 12-13 [referred to by Plaintiff as "Ex. A69-70"].)  Setting aside the fact that those

records also indicate that Plaintiff repeatedly refused to let Defendant O'Connor examine and/or

treat those hemorrhoids, the fact remains that this "evidence" is too slender a reed to grasp onto

to save Plaintiff's deficient claim regarding his hemorrhoid condition.  Even if Plaintiff did make

such complaints, or exhibit such symptoms, on April 26 through 29, 1998, Plaintiff has adduced

no evidence that Defendants O'Connor or Graceffo heard such complaints or observed such

symptoms in *July of 1998*, or (more importantly) that they did anything to *deprive* Plaintiff of

adequate medical care (e.g., a prescribed pain medication, or an authorized consult with a

specialist outside the facility) regarding his (alleged) hemorrhoid condition at that time.[34]

Because I recommend dismissal of this claim based on Plaintiff's failure to establish the

personal involvement of any Defendant in the alleged constitutional deprivation, I need not reach

Defendants' alternative argument that Plaintiff has failed to meet either of the two elements of

the test for a claim for deliberate indifference to a serious medical need under the Eighth

Amendment.  However, for the sake of thoroughness, I will briefly address that argument.

### b.    Elements of Eighth Amendment Claim

"[A] prison official violates the Eighth Amendment only when two requirements are met.

First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official

---

[34]    There is also the fact that, if the Court permitted Plaintiff's vague and conclusory claim (stated in Subparagraph "64" to Paragraph 6 of his Complaint) to survive based on these two pieces of paper, the Court would be (1) simply guessing that Plaintiff intended his claim to be against Defendants O'Connor and/or Graceffo (as opposed to some other Defendant), and (2) in effect, permitting Plaintiff to amend his (Fourth Amended) Complaint after discovery has closed, thus prejudicing those two Defendants, who have relied on the plain meaning of Plaintiff's allegations.

must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate

health or safety . . . ." *Farmer*, 511 U.S. at 834.

Here, Defendants make the following factual assertions regarding Plaintiff's (alleged)

hemorrhoid condition in their Rule 7.1 Statement: "There are no entries in plaintiff's Ambulatory

Health Record during the time period January 13, 1998 through September 24, 1998 indicating

that Plaintiff complained of hemorrhoids or symptoms of hemorrhoids [and] [t]here are no

entries whatsoever in Plaintiff's Ambulatory Health Record for the month of July 1998." (Dkt.

No. 58, Part 2, ¶¶ 9, 10.) I find that these assertion are supported by the record. (Dkt. No. 58,

Part 3, ¶¶ 10-12 & Ex. B.) Moreover, Plaintiff does not specifically controvert these factual

assertions in his Rule 7.1 Response. (Dkt. No. 60, Part 2, ¶ 9 [setting forth assertions that are

non-responsive to Defendants' assertions].) Therefore, Defendants' factual assertions are

deemed admitted by Plaintiff, under Local Rule 7.1(a)(3).

Defendants attempt to use these two factual assertions to support their argument that

Plaintiff has failed to establish both elements of the above two-part test for Eighth Amendment

denial-of-medical-care claims. Specifically, they argue that, because there is no evidence in

Plaintiff's "Ambulatory Health Record" of any complaints about (or symptoms of) a hemorrhoid

condition, Plaintiff has not shown that he has established that he even had a hemorrhoid

condition (much less a hemorrhoid condition that was so serious as to be of constitutional

proportions). Moreover, they argue that, because there is no evidence in Plaintiff's "Ambulatory

Health Record" that he made complaints about any medical conditions (or received treatment for

any medical conditions) in July of 1998, Plaintiff has not shown that any medical staff at Auburn

C.F. even had an opportunity to be deliberately indifferent to his alleged hemorrhoid condition. (Dkt. No. 58, Part 2 at 6-7.)

Liberally construed, Plaintiff's opposition papers offer only one piece of evidence in opposition to this argument–two pieces of paper (the same as discussed above) suggesting that Plaintiff may have complained to Defendant O'Connor of hemorrhoids, or shown symptoms of hemorrhoids, on April 26, 27, and 28 1998; and that Plaintiff may have complained to Defendant Graceffo of hemorrhoids, or shown symptoms of hemorrhoids, on April 29, 1998.  (Dkt. No. 60, Part 6 at 12-13 [referred to by Plaintiff as "Ex. A69-70"].)  Again, the problem with this "evidence" is that, while it might bear on whether Plaintiff had a hemorrhoid condition in *July of 1998* (three months later), it does not bear on whether any such condition in July of 1998 was sufficiently serious for purposes of the Eighth Amendment, whether Plaintiff complained of that condition (or exhibited symptoms of that condition) in July of 1998, whether Plaintiff was prescribed pain medication or authorized to attend a consult with a specialist outside the facility in July of 1998, and (most importantly) whether any Defendant interfered with that (allegedly) prescribed pain medication or authorized consult.

Under the circumstances, I agree with Defendants that Plaintiff has failed to establish either element of the two-part test for denial-of-medical-care claims under the Eighth Amendment.  As a result, I recommend that the Court dismiss Plaintiff's claim for deliberate indifference to his hemorrhoid condition.

2.     **Plaintiff's Claim Against Defendant Graceffo for Deliberate Indifference to Plaintiff's Eye Condition in or about August of 1998**

Plaintiff alleges that "[o]n or around August, 1998, plaintiff required that he be provided with the contact lens that was mailed into medical for min [sic] because he never got it and defendant GRACEFFO told him he had to wait one year"].)  (Dkt. No. 16, ¶ 6[65].)  Defendants argue that this claim against Defendant Graceffo should be dismissed because Plaintiff has failed to establish that Defendant Graceffo was personally involved in the (alleged) denial of adequate medical care in question.  (Dkt. No. 58, Part 2 at 8.)

In support of their argument, Defendants make numerous factual assertions regarding Defendant Graceffo's lack of personal involvement in their Rule 7.1 Statement.  (*See* Dkt. No. 58, Part 2, ¶¶ 1-8.)  I find that each of these factual assertions are supported by the record. Moreover, Plaintiff does not specifically controvert these factual assertions in his Rule 7.1 Response.  (Dkt. No. 60, Part 2, ¶¶ 1-8 [setting forth assertions that either repeat Defendants' factual assertions or that are non-responsive to Defendants' assertions].)

The closest Plaintiff comes to controverting these factual assertions is in Paragraphs 5, 6 and 8 in his Rule 7.1 Response.  With regard to Paragraph 5, Plaintiff fails to specifically deny that "Dr. Graceffo has never examined plaintiff's vision"; rather, Plaintiff implicitly argues that Dr. Graceffo in effect examined Plaintiff's vision by referring Plaintiff to a contact lens clinic on or about August 18, 1997, April 11, 2000, and April 18, 2000.  (*Compare* Dkt. No. 58, Part 2, ¶ 5 *with* Dkt. No. 60, Part 2, ¶ 5.)  Setting aside whether or not Plaintiff's implicit argument is supported by the record, Plaintiff's implicit argument is not the sort of specific denial required by

26

Local Rule 7.1.(a)(3).  In addition, Plaintiff's implicit argument is non-responsive.[35]

With regard to Paragraph 5, Plaintiff fails to specifically deny that "Dr. Graceffo has no control over when or even if, [sic] an inmate receives contact lenses"; rather, Plaintiff asserts essentially that "it is well settled" that medical specialists outside of prison merely make recommendations to prison doctors (such as Dr. Graceffo), who are the inmate's primary treating physicians and who make the ultimate decision as to the medical issue addressed by the medical specialists.  (*Compare* Dkt. No. 58, Part 2, ¶ 6 *with* Dkt. No. 60, Part 2, ¶ 6.)  The maze of record citations through which Plaintiff attempts to lead the Court does not lead to any evidence that supports Plaintiff's factual assertion.  (*See* Dkt. No. 60, Part 2, ¶ 6 [citing to Paragraphs 11-12 and 19 of Plf.'s Aff., which cite only to either an unattached "Ex. B" or to Paragraphs 7-9 of the Aff., which again cite to the unattached "Ex. B"].)  Even if, by "Ex. B," Plaintiff is referring to the "NYSDOCS Request & Report of Consultation" dated August 18, 1998 (Dkt. No. 60, Part 6 at 47 [elsewhere referred to by Plaintiff as "Ex. A104"), at most this evidence (if the document is indeed signed by Defendant Graceffo) suggests that Dr. Graceffo may *request* that Plaintiff receive a consult at an eye clinic; it does not mean that Dr. Graceffo is making the ultimate decision (or has any control over the decision) as to when or if Plaintiff *receives* contact lenses.[36]

---

[35]     For example, Plaintiff's assertion does not bear on whether or not Dr. Graceffo had first-hand knowledge *in July and August of 1998* of the *results* of any examination of Plaintiff's vision, which is the thrust of the relevance of Defendants' factual assertion.  (Dkt. No. 60, Part 6 at 47, 50, 51 [cited by Plaintiff as "A104," "A107," and "A108" respectively].)

[36]     I note that, logically, the only way that this document could possibly suggest that Dr. Graceffo had some modicum of "control" over when or if Plaintiff received contact lenses would be if it were established that (1) the only way that Plaintiff could receive contact lenses was if he were referred to an eye clinic outside Auburn C.F., and (2) Dr. Graceffo was the only doctor at Auburn C.F. who could have referred Plaintiff to an eye clinic outside Auburn C.F. Setting aside whether or not Plaintiff has established such facts, I decline to engage in such hair

Finally, with regard to Paragraph 8, Plaintiff fails to specifically deny that "Dr. Graceffo has no involvement with the distribution of contact lenses prescribed to inmates at Auburn Correctional Facility"; rather, Plaintiff, in a nearly incomprehensible sentence, appears to argue that Dr. Graceffo must have had such involvement since Plaintiff's contact lenses were sent to the facility medical department (due to the fact that he was "too weak to ambulate or travel because of being on a hunger strike").  (*Compare* Dkt. No. 58, Part 2, ¶ 8 *with* Dkt. No. 60, Part 2, ¶ 8.)  The "evidence" Plaintiff cites in support of this assertion are certain portions of his Complaint and Affidavit.  (Dkt. No. 60, Part 2, ¶ 8 [citing Plf.'s Compl., ¶¶ 6(38), 6(42)-(44), 6(48)-(49), and Plf.'s Aff., ¶¶ 13-19].)  It is perhaps of little surprise (given the presumptive and speculative nature of Plaintiff's factual assertion) that Plaintiff's "evidence" fails to establish (or even suggest) that Dr. Graceffo knew of, or was to play any part in, the medical department's alleged planned receipt and delivery of Plaintiff's contact lenses in or about August of 1998.

In light of the foregoing, Defendants' factual assertions (regarding Defendant Graceffo's lack of personal involvement) in their Rule 7.1 Statement are deemed admitted by Plaintiff, under Local Rule 7.1(a)(3).  Given the nature of these assertions about the process by which an inmate receives glasses and contact lenses, and Defendant Graceffo's limited role (or complete lack of a role) in that process in or about August of 1998, I find that they support Defendants' legal argument in favor of dismissal due to lack of personal involvement.

Plaintiff's memorandum of law spends much effort attempting to create a material issue

---

splitting of Defendants' factual assertion, especially considering (1) Plaintiff's failure to specifically controvert Defendants' factual assertion, and (2) the fact that Plaintiff does not allege in his Complaint that the wrongs that Dr. Graceffo committed included any failure to refer Plaintiff to an eye clinic outside Auburn C.F. (and, therefore, any such dispute of fact created would not be material to this motion).

of fact regarding the general issue of whether Defendant Graceffo (and three other Defendants) were deliberately indifferent to Plaintiff's serious medical needs regarding his eye condition. (*See, e.g.*, Dkt. No. 60, Part 4 at 14-22 [Plf.'s Mem. of Law].)  The main problem with Plaintiff's argument is that the vast majority of it fails to address the precise issue at hand (i.e., whether Defendants were personally involved in the alleged denial of Plaintiff's receipt by mail of his contact lenses in August of 1998).  (*See id.* [mostly containing argument regarding whether Plaintiff's medical need for contact lenses was sufficiently serious for constitutional purposes, or what the standard is for deliberate indifference to such a serious medical need].)  To the extent Plaintiff does address the issue at hand, he fails to cite any record evidence.

For example, Plaintiff argues *conclusorily* that Defendant Graceffo was "sufficiently made aware" of Plaintiff's medical need to wear contact lenses because he "dealt with the plaintiff's medical records [which contained a code used to identify the plaintiff's permission to wear contact lenses] on a daily basis." (*Id.* at 16 [containing no record cite].)  In addition, Plaintiff argues *vaguely* and *conclusorily* that, at some point, "Defendant Graceffo issued plaintiff a medical pass granting him authorization to wear his tinted glasses inside of the prison." (*Id.* at 19 [containing blank record cite].)  Finally, Plaintiff argues *conclusorily* that Defendant Graceffo "confiscated [Plaintiff's] new contact lens, interefer[ed] with the treatment once prescribed for his serious visual medical need, and intentionally delay[ed] the delivery of his prescribed contact lens cleaning supplies . . . ." (*Id.* at 19 [containing no record cite].)  I note that, again, the Court has no duty to independently review the record to find proof of a factual dispute regarding the issue at hand.

Even if the Court did find, in the record, evidence of Defendant Graceffo's *knowledge* of

Plaintiff's general eye condition, such evidence would not establish Defendant Graceffo's

personal involvement in the alleged constitutional deprivation. Still missing would be any

evidence establishing that Plaintiff was indeed going to be receiving contact lenses by mail in

August of 1998,[37] that Defendant Graceffo *knew* that Plaintiff was to going to be receiving

contact lenses by mail in August of 1998, and that Defendant Graceffo somehow *interfered* with

Plaintiff's receipt of the contact lenses by mail in August of 1998.

As a result, I recommend that the Court dismiss Plaintiff's claim against Defendant

Graceffo for deliberate indifference to Plaintiff's eye condition in or about August of 1998.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 58) be

**DENIED** to the extent it seeks dismissal of (1) the claims asserted against Defendants Walker

and Seitz in the "Fourth Cause of Action" of Plaintiff's Fourth Amended Complaint (Dkt. No.

16, ¶¶ 6[18], 7), and (2) the claims asserted against Defendants Walker, Gummerson and Seitz in

the "Fifth Cause of Action" of Plaintiff's Fourth Amended Complaint (Dkt. No. 16, ¶¶ 6[11]-

6[17], 7), but that Defendant's motion be **GRANTED** in all other respects; and it is further

**ORDERED** that, following the Court's final Order on Defendants' motion for summary

judgment, Defendants shall have **THIRTY (30) DAYS** in which to file a second motion for

summary judgment (if they choose to do so) with regard to any of Plaintiff's claims that have not

been dismissed due to a failure to serve or due to a violation of the three-year statute of

---

[37]     Although this fact is not determinative of my conclusion, I do find it worthy of
mentioning that the DOCS Health Service Policy cited by the parties (Policy No. 1.03) provides
that "CONSISTENT WITH DOCS DIRECTIVE 4911, INMATES ARE NOT ALLOWED TO
RECEIVE PRESCRIPTION EYE WEAR THROUGH THE FACILITY PACKAGE ROOM."
(Dkt. No. 58, Part 3 [Ex. A to Graceffo Aff.].)

limitations governing such claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 30, 2006
      Syracuse, New York

                             George H. Lowe
                             United States Magistrate Judge